UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

   vs.

JOSHUA MICHAEL SHAMASSIAN and
IMER MANUEL FUENTES,

                                      **INDICTMENT**

        Defendants.

_____/

        The Grand Jury charges:

## COUNT 1
(Wire Fraud Conspiracy)

From a date not later than on or about January 19, 2024, and continuing up to and including April 3, 2024, in Ingham County, in the Southern Division of the Western District of Michigan, and elsewhere, the defendants,

**JOSHUA MICHAEL SHAMASSIAN and
IMER MANUEL FUENTES,**

knowingly combined, conspired, confederated, and agreed with each other and others known and unknown to the Grand Jury, to commit wire fraud, in violation of 18 U.S.C. § 1343.

## The Object of the Conspiracy

The object of the conspiracy was to steal money from the accounts of reverse mortgage holders, which the defendants used to purchase goods and services for themselves and others.

**Manner and Means**

1.      At all times relevant to the Indictment, Company 1 was a reverse mortgage servicing company located in Lansing, Michigan. A reverse mortgage is a financial agreement by which a homeowner (usually a person over 62 years old) relinquishes equity in their home in exchange for regular payments, typically to supplement retirement income. The loan balance increases with each payment, and the loan is eventually paid off (usually by selling the house) when the homeowner dies or no longer lives in the home. Company 1 customers with existing accounts could create electronic "portals," which they could use to request disbursements or conduct other business related to their mortgages.

2.      The defendants used the personally identifiable information ("PII") of Company 1 customers (including names, addresses, dates of birth, and Social Security numbers) to open portals in the victims' names without their knowledge or consent. Using their unauthorized access, the defendants withdrew funds from the victims' accounts, and deposited them in other bank accounts the defendants had fraudulently set up in the victims' names. They then used associated credit cards and electronic financial services (including Cash App, Google Pay, and Payoneer) to transfer the money to themselves and others, and to purchase goods and services.

3.      When the defendants opened the Company 1 portals and other financial accounts in the victims' names, they used the victims' real PII so their applications would be approved. To avoid alerting the victims, they provided phony contact information, including e-mail addresses and phone numbers the defendants controlled.

**VICTIM M.S.**

4.      On or about January 23, 2024, the defendants used M.S.'s PII to open an online account at Stride Bank ("Stride") with an associated "Chime" Visa credit card.

5.      On or about January 24, 2024, the defendants used M.S.'s PII to open Cash App account C_hyd***** in M.S.'s name, without his knowledge or consent.

6.      On or about January 24, 2024, the defendants sent a forged Electronic Fund Transfer/Direct Deposit agreement form to Company 1, to authorize withdrawals from the account of M.S. and his wife, A.S. The submission included the victims' PII, and a voided check drawn on the fraudulent Stride account, which had M.S.'s name on it, but was actually controlled by the defendants.

7.      On or about January 26, 2024, the defendants transferred $38,000 from M.S. and A.S.'s Company 1 account to the Stride account.

8.      Between on or about January 27, 2024 and on or about February 16, 2024, the defendants transferred all $38,000 to other accounts in the United States and United Arab Emirates.

9.      In February 2024, SHAMASSIAN sent $12,750 of M.S.'s money to SHAMASSIAN's own Cash App account, C_gy2*****, with which he used the screen names "Josh Shmaze" and "Lucky Day" (the "Lucky Day account"). During the same month, SHAMASSIAN sent money from that account to his friends, his family members, and co-defendant FUENTES.

3

**VICTIM C.E.**

10.     On or about January 24, 2024, the defendants used C.E.'s PII to open an online account at mobile banking company One Finance Inc. ("One Finance"), with an associated Mastercard debit card.

11.     On or about January 24, 2024, the defendants sent a forged Electronic Fund Transfer/Direct Deposit agreement form to Company 1, to authorize withdrawals from C.E.'s reverse mortgage account. The submission included a voided check drawn on the One Finance account, which had C.E.'s name on it, but was actually controlled by the defendants.

12.     On or about January 31, 2024, the defendants transferred $37,000 from C.E.'s Company 1 account to the One Finance account. The same day, the defendants made two test withdrawals from the One Finance account at ATMs in Irvine, California.

13.     On or about February 1, 2024, the defendants used C.E.'s PII to open Cash App account C_fn2***** in her name, without her knowledge or consent.

14.     Between on or about January 31, 2024 and February 19, 2024, the defendants transferred all $37,000 to other accounts, including the Lucky Day account.

15.     On or about January 28, 2024, the defendants used C.E.'s identity and M.S.'s funds to open an account with an online platform for real estate professionals. That platform sells comprehensive property data, including homeowner names, addresses, and mortgage data, which can be used in combination with other PII to commit identity theft.

4

16.     On or about February 1, 2024, the defendants used the Mastercard linked to the One Finance account to buy three Apple iPhones for $2,755.17, at the Fashion Island shopping center in Newport Beach, California. SHAMASSIAN connected two of them to his personal iCloud account on February 2, 2024 and March 9, 2024.

17.     On or about February 2, 2024, SHAMASSIAN spent $511.82 from the One Finance account to purchase two pairs of distinctive "Purple Brand" jeans at Saks Fifth Avenue, in the South Coast Plaza shopping mall in Costa Mesa, California.

18.     On multiple occasions between on or about January 31, 2024 and on or about February 12, 2024, the defendants withdrew cash from the One Finance account at ATMs in Irvine, Newport Hills, Whittier, and Mission Viejo, California. Video footage from several of the withdrawals captured SHAMASSIAN and FUENTES (both individually and together) and SHAMASSIAN's silver Range Rover SUV. In the February 12, 2024 transaction, SHAMASSIAN was wearing Purple Brand jeans.

19.     Between on or about February 6, 2024 and on or about February 12, 2024, FUENTES used the Mastercard linked to the One Finance account to buy $11,000 in $500 gift cards at Walmart stores in Laguna Niguel, San Clemente, Long Beach, Paramount, Santa Fe Springs, and Cerritos, California.

### VICTIM F.W.

20.     On or about January 19, 2024, the defendants used F.W.'s PII to open an online account at Bancorp Bank, Inc. ("Bancorp") with an associated "Chime" Visa debit card.

21.    On or about January 23, 2024, the defendants sent a forged Electronic Fund Transfer/Direct Deposit agreement form to Company 1, to authorize withdrawals from the account of F.W. and his wife J.W. The submission included the victims' PII, and a voided check drawn on the fraudulent Bancorp account, which had F.W.'s name on it, but was actually controlled by the defendants.

22.    On or about January 28, 2024, the defendants transferred $8,200 from F.W. and J.W.'s Company 1 account to the Bancorp account.

23.    Between on or about January 26, 2024 and on or about February 8, 2024 the defendants transferred all $8,200 from the Bancorp account to other accounts in the United States and the United Arab Emirates, including the Lucky Day account and a Google Pay account in the name of "Josh Shmaze."

24.    Beginning not later than on or about January 19, 2024, SHAMASSIAN saved information relating to victims M.S., C.E., F.W. and other individuals in the notes application on his iPhone, which was backed up to his iCloud accounts. The information included the victims' dates of birth, social security numbers, and addresses. The notes also included email addresses used to open new accounts in the victims' names, passwords, and notes on the amounts stolen.

18 U.S.C. § 1349

## COUNTS 2-9
(Aggravated Identity Theft)

On or about the dates below, in Ingham County, in the Western District of

Michigan, Southern Division, and elsewhere,

### JOSHUA MICHAEL SHAMASSIAN

knowingly possessed and used, without lawful authority, means of identification of

another person, during and in relation to the wire fraud scheme charged in Count 1,

knowing that means of identification belonged to an actual person:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 2 | January 19, 2024 | Used F.W. name, date of birth, address, and social security number to open Bancorp ****7139/Chime Visa ****5045 |
| 3 | January 23, 2024 | Used F.W. name and account number on forged Company 1 Electronic Fund Transfer / Direct Deposit Agreement |
| 4 | January 23, 2024 | Used M.S. name, date of birth, address, and social security number to open Stride ****1096/Chime Visa ****6065 |
| 5 | January 23, 2024 | Used M.S. and A.S. names and account numbers of on forged Company 1 Electronic Fund Transfer / Direct Deposit Agreement |
| 6 | January 24, 2024 | Used M.S. name, date of birth, address, and social security number to open Cash App account C_hyd****** |
| 7 | January 24, 2024 | Used C.E. name, date of birth, address, and social security number to open One Finance ****4651/Mastercard ****7618 |
| 8 | January 24, 2024 | Used C.E. name and account number on forged Company 1 Electronic Fund Transfer / Direct Deposit Agreement |
| 9 | January 28, 2024 | Used C.E. name, date of birth, social security number, and address to open Cash App account C_fn2****** |

18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 1028A(c)

**FORFEITURE ALLEGATION**
**(Wire Fraud Conspiracy)**

The allegations contained in Count 1 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Pursuant to 18 U.S.C. § 982(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of the offense in violation of 18 U.S.C. § 1349 set forth in Count 1 of this Indictment, the defendants,

**JOSHUA MICHAEL SHAMASSIAN and**
**IMER MANUEL FUENTES,**

shall forfeit to the United States any property, real or personal, which constitutes or is derived, directly or indirectly, from proceeds traceable to the violation. The property to be forfeited includes, but is not limited to, the following:

A. MONEY JUDGMENT: A sum of money that represents the proceeds obtained, directly or indirectly, from the offense charged in Count 1 of this Indictment;

B. SUBSTITUTE ASSETS: If any of the property described above, as a result of any act or omission of the defendants

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant

to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 2461(c)
21 U.S.C. § 853(p)
18 U.S.C. § 1349

A TRUE BILL

[ /s/ Redacted ]
_____
GRAND JURY FOREPERSON

ALEXIS M. SANFORD
Acting United States Attorney

_____
NILS R. KESSLER
Assistant United States Attorney

9